1

2

3

4                       UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6                        SAN FRANCISCO DIVISION

7

8     JEWISH LEGAL NEWS, INC.,

9                    Plaintiff,                    Case No. 23-cv-05064-PHK

10            v.

11    U.S. DEPARTMENT OF EDUCATION,                **ORDER ON SUMMARY JUDGMENT**

12                   Defendant.                    Re: Dkts. 35 and 36

13

14            This is a Freedom of Information Act case.  Now before the Court are cross-motions for

15    summary judgment from Plaintiff Jewish Legal News, Inc. ("JLN") on the one hand, and from the

16    Defendant, the United States Department of Education ("DOE"), on the other hand.  [Dkts. 35 and

17    36].  The Parties filed respective opposition briefs to each other's cross-motions and reply briefs in

18    support of their motions.  [Dkts. 36–38].  A hearing was held on the summary judgment motion and

19    cross-motion on November 25, 2024.   [Dkt. 42].   After the hearing, the Parties filed a joint

20    stipulation and proposed order narrowing the disputes in the cross-motions for summary judgment.

21    [Dkt. 43].  The Court has granted that stipulation. [Dkt. 44].  After carefully reviewing the briefing

22    and all relevant documents, and after considering the Parties' submissions and oral argument, the

23    Court **GRANTS-IN-PART** and **DENIES-IN-PART** the cross-motions for summary judgment.

24            The Parties have consented to proceed before a Magistrate Judge for all purposes, including

25    the entry of final judgment under 28 U.S.C. § 636(c).  [Dkts. 6, 15].

26                            **RELEVANT BACKGROUND**

27            On October 3, 2023, JLN filed the original complaint in this action against the DOE under

28    the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  [Dkt. 1].  JLN filed an Amended

United States District Court
Northern District of California

Complaint on April 2, 2024.   [Dkt. 21].   "JLN is an online news magazine located at www.jewishlegalnews.com, that covers important debates and issues in the Jewish communities in the US, Israel, and worldwide."  *Id.* at ¶ 2.

On August 28, 2023, JLN submitted the FOIA requests at issue here.  *Id.* at ¶ 29 and Exhibit B.  Generally, JLN's FOIA requested eight categories of documents from the DOE related to how that agency handles allegations of antisemitism at colleges and universities, including complaints from April 1, 2023, to May 30, 2023, and the status of related investigations.  *Id.*  JLN also requests documents on the details of the DOE's strategy for combating campus antisemitism and how Title VI should protect Jewish students from discrimination.  *Id.*  JLN also requested "[a]ny other FOIA requests and responses regarding complaints or allegations of antisemitism on campus."  *Id.*  In the FOIA request, JLN indicated the material sought is within the date range from August 1, 2021, to August 1, 2023.  *Id.*

"On August 28, 2023, Defendant sent an email assigning the request 23-02670-F."  *Id.* at ¶ 32 (citation omitted).  The following day, "Defendant sent a letter seeking clarification on the date range."  *Id.* at ¶ 33 (citation omitted).  The same day, "Plaintiff clarified the date range as 8/1/21 to 8/1/23.  Plaintiff narrowed the request for all antisemitism complaints to a range of 4/1/23 to 5/30/23 only."  *Id.* at ¶ 34 (citation omitted).  The following day, Defendant sent a letter stating that the Request had been updated to the status of 'In Progress.'"  *Id.* at ¶ 35 (citation omitted).

"On September 28, 2023, Defendant sent another letter[]" which stated, "[a]t this time, your request is still being processed.  We appreciate your patience as we work diligently to process your request.  Please be advised that the average request processing time is approximately 185 business days.  As this is an average, your request may take more time or may be processed sooner."  *Id.* at ¶ 36 (citation omitted).

On March 11, 2024, "Defendant stated that it had completed production of documents it believed were responsive to Plaintiff's requests."  *Id.* at ¶ 38.

In the Amended Complaint, JLN asserts four causes of action: (1) "Failure to Comply with Statutory Deadlines;" (2) "Pattern and Practice Violation of FOIA;" (3) "Use of Invalid Exemptions;" and (4) "Failure to Reasonably Segregate."  *Id.* at 9–12.  On May 6, 2024, the DOE

United States District Court
Northern District of California

filed its Answer to the Amended Complaint.  [Dkt. 23].

On August 16, 2024, the DOE filed the instant motion for summary judgment.  [Dkt. 35]. On August 30, 2024, JLN filed its opposition brief to the DOE's motion for summary judgment, and also cross-moved for summary judgment.  [Dkt. 36].  On September 13, 2024, the DOE filed its reply brief in support of its summary judgment motion, combined with its opposition to the cross-motion for summary judgment.  [Dkt. 37].  On September 20, 2024, JLN filed its reply brief in support of its cross-motion for summary judgment.  [Dkt. 38].  On November 22, 2024, the Court held a hearing on the cross-motions for summary judgment.  [Dkt. 42].  At the hearing, the Parties agreed to meet and confer in an attempt to resolve the disputes.  *Id.*  The Parties filed a joint stipulation with a proposed order resolving some, but not all disputes.  [Dkt. 43].  The Court has granted that stipulation.  This Order resolves the remaining unresolved disputes.

## LEGAL STANDARD

FOIA cases are typically decided on motions for summary judgment.  *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1081 (N.D. Cal. 2015) (citation omitted).  Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption[.]'"  *Id.* (citation omitted).  These submissions are typically referred to as a *Vaughn* index, and they must be from "affiants who are knowledgeable about the information sought[,]" and "detailed enough to allow court[s] to make an independent assessment of the government's claim of exemption."  *Id.*  *Vaughn* indices, however, are not appropriate in all FOIA cases.  *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 804 (9th Cir. 1996).  "Specificity is the defining requirement."  *Ecological Rts. Found v. U.S. Env't Prot. Agency*, 607 F. Supp. 3d 979, 993 (N.D. Cal. 2022), *aff'd*, No. 22-15936, 2023 WL 4342100 (9th Cir. July 5, 2023) (citation omitted).

Agency FOIA affidavits are presumed to be made in good faith and should be accorded

1    substantial weight. *Id.* (citation omitted). "[T]o prevail on summary judgment, an agency need

2    only establish that the justification for invoking a FOIA exemption appears logical, which it may

3    achieve through affidavits that describe the justification with reasonable specificity." *Id.* (citing

4    *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 769, 774 (9th Cir. 2015)).

5                                          **DISCUSSION**

6            The cross-motions for summary judgment address four general issues in dispute: (I) whether

7    the DOE properly withheld and redacted certain documents under a corresponding FOIA exemption;

8    (II) whether the DOE has a pattern and practice of failing to meet the FOIA statutory deadline; (III)

9    whether the DOE failed to meet the statutory deadline in this specific instance (including whether

10   DOE failed to make a determination within the deadline and failed to conduct a reasonable search);

11   and (IV) whether the DOE failed to reasonably segregate documents. [Dkts. 35 and 36].

12   **I.     FOIA EXEMPTIONS**

13          **A.     Challenges to previous FOIA responses**

14           Standing to sue is "an essential and unchanging part of the case or controversy requirement

15   of Article III." *Mahtesian v. U.S. Off. Of Pers. Mgmt.*, 388 F. Supp. 2d 1047, 1050 (N.D. Cal. 2005)

16   (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Any person who submits a FOIA

17   request has standing to bring a FOIA challenge in federal court on their own FOIA request if such

18   request is denied in whole or in part. *Id.* at 1048 (citing *United States v. Richardson*, 418 U.S. 166,

19   204 (1974)). It is the FOIA plaintiff's burden to establish that they are a proper party to challenge

20   the FOIA request. *Id.* at 1050 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). A person

21   whose name does not appear on the request lacks standing to sue under FOIA, even if their interest

22   was asserted in the request. *Id.* at 1049. Indeed, a person whose name does not appear on a request

23   for records has not made a formal request for documents within the meaning of the statute. *Id.* Such

24   a person, regardless of their personal interest in disclosure of the requested documents, has no right

25   to receive either the documents or notice of an agency decision to withhold the documents. *Id.*

26   (citing 32 C.F.R. §§ 701.7(a), (c)(1)–(3) (1992); 5 U.S.C.A. § 552(a)(6)(A)). Accordingly, a person

27   whose name does not appear on a FOIA request for records cannot sue in district court when the

28   agency refuses to release requested documents, because they have not administratively asserted a

right to receive them in the first place. *Id.* In other words, only the person whose name appears on a FOIA request has standing to sue if the request is denied, because they are the only one who has formally asserted a right to the documents. *Id.*

Here, certain redactions and withholdings in the FOIA response to JLN's request were originally made in previous FOIA responses. *See* Dkt. 35-1 at 2. JLN's FOIA request sought "[a]ny other FOIA requests and responses concerning complaints or allegations of antisemitism on campus." [Dkt. 21 at ¶ 29 (Request category no. 8)]. JLN does not have standing to challenge the redactions to, and withholding of, the documents produced in response to those earlier FOIA requests. *Mahtesian*, 388 F. Supp. 2d at 1049 (citing 32 C.F.R. §§ 701.7(a), (c)(1)–(3) (1992); 5 U.S.C.A. § 552(a)(6)(A)). Accordingly, summary judgment is **GRANTED** in favor of the DOE for certain redactions and withholdings in the FOIA response that were originally made in response to previous FOIA requests and produced here in response to JLN's request category number 8.

### B.    Exemption 5 withholdings

The Parties dispute the propriety of four specific withholdings under exemption 5. Exemption 5 provides that FOIA does not apply to "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Lahr v. Nat'l Transp. Safety Bd.,* 569 F.3d 964, 979 (9th Cir. 2009) (quoting 5 U.S.C. § 552(b)(5)). Exemption 5 "shields 'those documents, and only those documents, normally privileged in the civil discovery context.'" *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992), *as amended on denial of reh'g* (Sept. 17, 1992) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). The privilege invoked here is the "deliberative process" privilege. [Dkt. 35 at 9]. "In light of the strong policy of the FOIA that the public is entitled to know what its government is doing and why, [E]xemption 5 is to be applied as narrowly as consistent with efficient Government operation." *Id.* (quoting *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 10 F.3d 1089, 1093 (9th Cir. 1997)).

Two elements are required for the deliberative process privilege under exemption 5 to apply: the document must be (1) predecisional and (2) deliberate. *Id.* "A 'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include

recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* at 979–80 (quoting *Assembly of State of Cal.*, 968 F.2d at 920). "A predecisional document is a part of the 'deliberative process,' if the disclosure of the materials would expose an agency's decision-making process in such a way as to perform its functions." *Id.*

On the other hand, a document reflects a final agency decision, and thus is not predecisional, and the reasons supporting it if "it communicates a policy on which the agency has settled." *Am. C.L. Union Found. v. U.S. Dep't of Just.*, No. 19-CV-00290-EMC, 2021 WL 4481784, at *5 (N.D. Cal. Sept. 30, 2021). Importantly, "[a] document is not final solely because nothing else follows it" because during agency deliberations "some ideas are discarded or simply languish." *Id.* Instead, to determine if a document is final, Courts must evaluate "whether the agency treats the document as its final view on the matter." *Id.* "Documents 'are deliberative if they were prepared to help the agency formulate its position.'" *Id.* at *6 (quoting *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)).

The first dispute centers around a purported "internal deliberative draft document containing the Department's Office of Civil Rights' ("OCR") response to a question about what the Department is doing to implement Executive Order 13899." Dkt. 35 at 10 (citing Dkt. 35-1 at 13–14).

**Production:** March 8, 2024, Interim Response (289 pages)

| Page(s) | Date of Document | Exemption | Portion Withheld | Description of Redactions |
|---------|------------------|-----------|------------------|---------------------------|
| 56–59 | Withheld pursuant to a FOIA exemption | (5) | In Full | Discovery privilege: The record is an internal deliberate draft document containing the Department's Office of Civil Rights' response to a question about what the Department is doing to implement Executive Order 13899. The record contains OCR's edits and comments to drafting the response. |

Dkt. 35-1 at 13.

6

With regard to this withheld document, JLN argues that the "DOE does not specify what final decision these deliberations are in furtherance of, and when the final decision will be reached, and DOE does not specify what harm would result from disclosure." [Dkt. 36 at 15]. JLN asserts that "there is no 'reasonable foreseeability of harm' in disclosing these records." *Id.* (citation omitted).

According to DOE's *Vaughn* index, this withheld document "contains OCR's edits and comments to drafting the response." Dkt. 36 at 10 (quoting Dkt. 35-1 at 13). DOE argues that this document is deliberative "as it contains a draft response and comments thereto for future implementation of an executive order[,]" and argues that this document is predecisional "because a final response had not yet been issued and any potential agency policy was naturally being developed, as evidenced by the comments and edits prior to the final response." [Dkt. 35 at 10].

Draft documents that do not represent final policy are typically protected under exemption 5. *Am. C.L. Union Found.*, 2021 WL 4481784, at *6 (quoting *Sierra Club, Inc.*, 592 U.S. at 268). Here, the presence of OCR's edits and comments reflects the agency's internal deliberation and refinement process. *Id.* Such draft documents that do not constitute a final policy are exempt from disclosure because they are deliberative. *Id.* (citation omitted). Because the document includes comments and edits prior to the final response, the document at issue is predecisional. Accordingly, the DOE has met its burden under exemption 5 with regard to pages 56–59 of the March 8, 2024, Interim Response (reflected on page 13 of the *Vaughn* index). [Dkt. 35-1 at 13]. The Court **GRANTS** summary judgment in favor of the DOE with regard to this withheld document.

The Parties' second dispute with regard to exemption 5 centers around a draft version of a policy document, a "Dear Colleague" letter on the topic of "Protecting Students from Discrimination Based on Shared Ancestry and Ethnic Characteristics." [Dkt. 36 at 15]. After the hearing on the motion for summary judgment, the Parties stipulated to withdrawing the challenges to the withholdings in these pages, with certain exceptions detailed below. [Dkt. 43]. The Court granted that stipulation, and accordingly, the dispute is resolved as moot. [Dkt. 44].

The third and fourth disputes are materially identical. JLN seeks summary judgment that the assertion of the deliberative process privilege under exemption 5 should not apply to redactions

1    of emails exchanged with people outside the agency, specifically pages 1–8 of the March 11, 2024,

2    final production.  [Dkt. 36 at 16].  The DOE argues that the *Vaughn* index for these pages dispels

3    this contention.  [Dkt. 37 at 4].  Quoting the *Vaughn* index, the DOE argues that "pages 1–8 of

4    Defendant's March 11, 2024, final production contained communications with the White House."

5    *Id.*  The DOE argues that the White House is considered an agency for purposes of determining

6    whether a communication is an interagency deliberation under FOIA.  *Id.*

7           There appears to be no dispute between the Parties as to the propriety of redacting and

8    withholding emails between the DOE and the White House, where all such emails were sent or

9    received from a governmental email account.  JLN does not challenge that such interagency emails

10   would be covered by the deliberative process privilege on the record presented.  The dispute here is

11   focused on the question of whether any of the redacted or withheld emails include emails sent from

12   accounts outside the government.

13          Exemption 5 generally applies only to internal government communications.  *See* Dep't of

14   Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 3 (2001) (exemption 5 focuses on

15   "communications" between agencies).  Redactions of communications with people outside the

16   government would therefore be improper under exemption 5 unless the government establishes that

17   the communications are somehow part of an agency's deliberative process (if that were possible

18   under the facts of a given case).  *See id.*  JLN argues that the redaction of the email addresses makes

19   it impossible to determine whether or not these are, in fact, interagency communications.  [Dkt. 38

20   at 4].  JLN argues that the deliberative process privilege under exemption 5 would not apply to

21   communications with persons who are outside the scope of the privilege, including emails sent to

22   addresses that are outside the White House.  [Dkt. 36 at 16].

23          It is the government's burden to demonstrate that the deliberative process privilege applies.

24   *See California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal. 2008).  Here, the

25   government's *Vaughn* index and arguments make the generalized assertion that these documents are

26   emails between the DOE and the White House, without any specificity as to each document and

27   without identifying the email addresses of the senders/recipients.  The DOE has not sufficiently

28   established what any of the challenged email addresses are.  They may all be White House email

United States District Court
Northern District of California

8

addresses and communications, or they may all be emails sent to and received from email accounts outside the government—there is no way to know based on the DOE's submissions.  The issue here is particularly focused because the DOE has the burden to segregate information in documents.  *See id.*  The DOE has not provided sufficient information in the *Vaughn* index or otherwise to establish that these emails are all within the scope of the privilege, because the redactions prevent determining whether these emails are to or from email accounts inside or outside the White House.  As such, the DOE has not met its burden to demonstrate that the redactions as a whole are proper under exemption 5 because the DOE has provided insufficient information to demonstrate that the persons involved in all of the challenged communications are within the scope of the privilege.

Accordingly, the Court **GRANTS-IN-PART** JLN's cross-motion for summary judgment solely with regard to those redacted emails (from pages 1–8 of the March 11, 2024, final production) that were sent or received from a non-governmental email address.  The Court **DENIES-IN-PART** JLN's cross-motion for summary judgment as to those redacted emails (from pages 1–8 of the March 11, 2024, final production) that were sent or received from a governmental email account or address (such as a White House email address).

### C.  Exemption 6 withholdings

The Parties dispute seven different redactions under exemption 6.  "Exemption 6 states that FOIA does not apply to 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Lahr*, 569 F.3d at 973 (quoting 5 U.S.C. § 552(b)(6)).  "Exemptions 6 [] speak[s] of an 'unwarranted' invasion of personal privacy, not any invasion."  *Id.* at 973–74 (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Def. v. Fed. Labor Relations Auth. (FLRA)*, 510 U.S. 487, 494–95 (1994)).  "So, to determine whether a record is properly withheld, we must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure."  *Id.*  "Under Exemption 6, the concept of privacy not only encompasses that which is inherently private, but also includes an 'individual's control of information concerning his or her person.'"  *Abhyanker v. United States Pat. & Trademark Off.*, No. 23-CV-00746-AMO, 2024 WL 3908107, at *9 (N.D. Cal. Aug. 19, 2024) (quoting *DOJ v. Reporters Comm. for Freedom of the*

*Press*, 489 U.S. 749, 763 (1989)).

To evaluate an exemption 6 dispute, requires a multi-step analysis.  First, "a court must determine whether the information at issue is contained within a personnel, medical, or 'similar' file." *Id*. (citing 5 U.S.C. § 552(b)(6)).  Second, "a court must determine whether there is a significant privacy interest in the requested information." *Id*. (citing *Multi Ag Media LLC. v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008)).  Third, "the court must evaluate the requester's asserted FOIA public interest in disclosure." *Id.* (citing *Favish*, 541 U.S. at 160).  "Finally, if there is a significant privacy interest in nondisclosure and a FOIA public interest in disclosure, the court must balance those competing interests to determine whether disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'"  *Id*. (quoting 5 U.S.C. § 552(b)(6)).  "Because Exemption 6 speaks of an 'unwarranted' invasion of personal privacy, 'a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.'" *Id*. (quoting *FLRA,* 510 U.S. at 495).

The first three disputes under exemption 6 center around the redaction of another FOIA requestor's name and address; a redaction of a handwritten signature; and redactions surrounding phone numbers.  [Dkt. 35 at 11].  The DOE argues these three categories of redactions are proper under exemption 6 because "[t]hese complainants shared deeply personal information regarding their experiences with the understanding that their identities were confidential during the investigation process. Information about their identities does not shed light on DOE's performance of its statutory duties, and reveals nothing about DOE's own conduct." *Id.* (citation omitted).

JLN's opposition makes clear that "JLN has not sought any personal information identifying specific complainants or witnesses…. Plaintiff does not challenge these redactions of names." [Dkt. 36 at 16].  Further, JLN made clear in reply that "JLN is not seeking the complainants' names or their home addresses." [Dkt. 38 at 7].  Because JLN does not oppose part of these categories of redactions under exemption 6, the Court **GRANTS** summary judgment in favor of the DOE with regard to any redactions under exemption 6 of other FOIA requestors' names, addresses, phone numbers, or any other personal identifying information of complainants or witnesses.

The fourth dispute centers around withholdings that include the identities and other

1   identifying information of individuals who complained of certain discriminatory behavior on

2   university campuses (the "Complainants").   The DOE indicates that redactions of information

3   regarding the complainants are proper because the complainants were entitled to confidentiality

4   while their complaints were adjudicated.   [Dkt. 35 at 11].   The DOE argues that "[t]hese

5   complainants shared deeply personal information regarding their experiences with the

6   understanding that their identities were confidential during the investigation process.   Information

7   about their identities does not shed light on DOE's performance of its statutory duties, and reveals

8   nothing about DOE's own conduct."   *Id.*

9       JLN admits that it does not seek any personal information identifying specific complainants

10  or witnesses.   [Dkt. 36 at 16].   JLN challenges the alleged overbreadth of the redactions under

11  exemption 6 because the redactions "offer little protection from the remote and attenuated risk of

12  even identifying someone's identity, let alone exposing them to harm" while allegedly

13  "prohibit[ing] understanding of the substance of the complaint and the alleged discrimination."   *Id.*

14  The only expressly identified redactions under exemption 6 discussed by JLN are with regard to

15  page 3 of Exhibit E to JLN's cross-motion for summary judgment.   *Id.* (quoting Exhibit E, p. 61/162

16  of the Second March 8, 2024, Production).   In context, JLN's complaint that these redactions

17  "prohibit understanding of the substance of the complaint and the alleged discrimination" rings

18  hollow:

> With respect to Allegations 1 and 2, you alleged that the SPS's offering the Program[1] and the Business School's planning to offer Scholarship 1[2] during academic year 2022-2023 discriminates on the bases of race, color, and/or national origin.   In support of the allegations, you alleged that the Program and Scholarship 1 are both designed to assist graduates of HBCUs and therefore violate Title VI by "exclud[ing] for the most part people who are not Black," "Black people who don't have Southern connections," and "immigrant populations of Black people such as Africans, Latinos, Caribbeans, and European Blacks who are not likely to have attended a[n] HBCU."   You further stated that as a ▓(b)(6);▓ of the University ▓(b)(6);▓ and an ▓(b)(6); (b)(7)(C)▓ with ▓(b)(6); (b)(7)(C)▓ ▓(b)(6); (b)(7)(C)▓ you feel excluded because the Program and Scholarship 1 were unavailable to you when you were enrolled in the University.

25  [Dkt. 36-6 at 3].

26      While JLN's arguments focus solely on the redactions in one sentence, JLN ignores the

27  remainder of the paragraph (and the remainder of the letter, most of which is unredacted), which

28  sets forth in plain terms and in detail the substance of the complainant's allegations of

discrimination.  In balancing the privacy interests here against the alleged need for public disclosure, the Court **FINDS** that JLN has wholly failed to demonstrate any need for the redacted private identifying information of the complainant.

Because JLN argued that the redactions of this Exhibit E are emblematic of the alleged overbreadth of the exemption 6 redactions, and because (as demonstrated) these redactions are demonstrably ***not*** overbroad, the Court further **FINDS** that JLN has failed to show why summary judgment should not be granted as to any other exemption 6 redactions.  Accordingly, the Court **GRANTS** summary judgment in favor of the DOE with regard to those exemption 6 redactions relating to private identifying information of complainants and witnesses.

The fifth dispute here with regard to exemption 6 relates to the redaction of an email that describes a social media post.  [Dkt. 36 at 17].  This specific redaction was the subject of the Parties' post-hearing meet and confer but remains unresolved.  [Dkt. 43].  JLN argues that the email refers to a social media post that was published and that there is no evidence that the privacy settings for the author's account were set to limit the viewership of the post.  *Id.* at 2.  Additionally, JLN argues that the name of the individual who publicly posted the social media post is already known.  *Id.*

In response, the DOE argues generally that an individual has a privacy interest in their social media account.  [Dkt. 37 at 5].  However, the DOE does not proffer any information or evidence that this social media post was private or that the account settings at the time of posting limited publication or access to the social media post.  Further, the exhibit for this document states that this social media post was emailed by the author to a government employee and that the author retweeted the post.  [Dkt. 36-5 at 2].  By its nature, "retweeting" indicates a further and potentially wider publication of an original social media posting.

The DOE has the burden of establishing that exemption 6 justifiably applies to these redactions.  *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 172 (1991).  The DOE has not met this burden.  To the contrary, a more than reasonable interpretation of the document is that the social media post was public (as is common with social media posts and the default for the former Twitter app).  Withholding and redaction are not proper because there would be no "unwarranted invasion of personal privacy."  *Lahr*, 569 F.3d at 973.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Because the DOE has not met its burden, the redaction under exemption 6 to the body of this

2    email regarding a social media post is not sufficiently supported.  As such, the Court **GRANTS**

3    summary judgment in favor of JLN with regard to the exemption 6 redaction of the body text of this

4    email regarding a social media post.

5        A related, sixth dispute focuses not on the text of the email discussed above, but rather on

6    the redaction of the personal email account of the person who made the social media post.  [Dkt. 38

7    at 6].  JLN argues that redacting the entirety of the email address is not justified, and that the domain

8    name of the email address should be unredacted to identify the organization with which the author

9    was affiliated.  *Id.*  The DOE argues in response that "[a]n individual has an inherent right to privacy

10   with their personal email address."  [Dkt. 37 at 5].

11       A personal email address is personally identifying information properly subject to

12   withholding.  *See Transgender L. Ctr.*, 46 F.4th at 784 (withholding government employees' email

13   addresses to prevent the disclosure of personally identifiable information).  Beyond this, an

14   individual's email address is a means for directly contacting someone, which (if publicly disclosed)

15   carries risks of harassment, so-called "spamming," and generally uninvited communications of all

16   types.  .  Further, it is well-known that an individual's email address is often linked in online

17   databases and search tools to other personal identifying information, such as addresses, phone

18   numbers, and family members' identities.

19       JLN's argument that partial unredaction to disclose the URL or domain name of this

20   individual's email account would identify the organization they are affiliated with is based on pure

21   speculation.  [Dkt. 38 at 6].  It is well known that people often use freely available email addresses

22   from general online email service providers (such as Gmail, Yahoo, AOL, and others), which do not

23   identify any person's affiliation with their employer or organization.  JLN simply assumes, without

24   basis or showing, that unredaction of the domain or URL of this email address would necessarily

25   disclose the person's organization.  Such speculation is insufficient grounds to challenge a redaction

26   based on exemption 6.  Further, JLN has not persuasively explained why knowing the organization

27   with which this person is affiliated is relevant to the subject matter of the request, and certainly has

28   not shown how disclosure of such information outweighs the privacy interests here.  Mere curiosity

about the possibility of uncovering a private individual's affiliation with an organization is not sufficient.

Accordingly, the Court **GRANTS** summary judgment in favor of the DOE with regard to the redaction based on exemption 6 as to this email address in its entirety.

The final exemption 6 dispute centers on JLN seeking disclosure of the names and titles of university administrators.  [Dkt. 36 at 17 (citing Dkt. 36-7)].  JLN argues that the DOE has improperly redacted the names of university administrators in their handwritten signatures on documents, based on confidentiality concerns.  As a fallback position, JLN argues that, even if the name were properly redacted, the title of the signatory should not be redacted under exemption 6.  [Dkt. 38 at 6].

In opposition, the DOE argues that the redactions of these signatures were applied in response to a separate FOIA request that is not at issue in this action.  [Dkt. 37 at 5].  As discussed above, JLN lacks standing to argue that the exemptions do not apply to redactions made in response to a separate FOIA request.  Accordingly, the Court **GRANTS** summary judgment in favor of the DOE with regard to the redactions of handwritten signatures under exemption 6.

### D.    Exemption 7 Redactions and Withholdings

Under exemption 7, the Parties raise disputes over three categories of redactions.  "'[L]aw enforcement purposes[,]' under Exemption 7[,] includes both civil and criminal matters within its scope." *Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enft*, No. 2:22-CV-04760-SHK, 2024 WL 3370532, at \*10 (C.D. Cal. July 8, 2024), *reconsideration denied*, 347 F.R.D. 518 (C.D. Cal. 2024) (quoting *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002)).  "Agencies that combine administrative and law enforcement functions and agencies whose principal function is criminal law enforcement may both withhold records under Exemption 7." *Id*. (citing *Tax Analysts*, 294 F.3d at 77).  "When a mixed-function agency withholds records, 'a court must scrutinize with some skepticism [whether] the particular purpose claimed for the disputed documents' was, in fact, related to law enforcement purposes." *Id*.  "The court focuses 'on how and under what circumstances the requested files were compiled . . . , and whether the files sought related to anything that can fairly be characterized as an enforcement proceeding.'" *Id*. (quoting *Jefferson*

*v. DOJ, Office of Professional Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002)).  "The agency must show: (1) 'the investigatory activity that gave rise to the documents is related to the enforcement of federal laws,' and (2) 'there is a rational nexus between the investigation at issue and the agency's law enforcement duties.'"  *Id.*

Here, the Parties do not dispute that the law enforcement exemption can apply to the DOE. *Compare* Dkt. 37 at 6, *with* Dkt. 36.  There appears to be no dispute that the DOE Office of Civil Rights serves as a law enforcement agency enforcing certain civil rights laws.  [Dkt. 35 at 12; Dkt. 36 at 20 (JLN admitting that "to the extent DOE is a law enforcement agency, it is at most a 'mixed function agency'")].  As such, the exemption 7 disputes here are addressed to the breadth of specific redactions.

The first exemption 7 dispute centers on redactions that withhold information on underlying incidents involving certain complainants.  The DOE asserts exemption 7(A) with regard to these redactions.  Exemption 7(A) protects from disclosure information that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

Here, JLN argues that the "DOE cannot establish that disclosure of the records could reasonably be expected to interfere with enforcement proceedings."  [Dkt. 36 at 20].  The specific redactions identified by JLN as allegedly improper are with regard to certain pages of Exhibit G [Dkt. 36-8] to JLN's cross-motion.  [Dkt. 36 at 21 (citing "Exhibit G, p. 19–23, 46–53")].  JLN's argument regarding this Exhibit G is confusing because Exhibit G only consists of a thirteen-page document, and there are no pages "19–23" or "46–53" marked or identified anywhere on this document.  *See* [Dkt. 36-8].  It appears that these are the page numbers of DOE's December 2023 document production, but JLN has not correlated those page numbers with the pages of Exhibit G as submitted to the Court.  Accordingly, that procedural failure undercuts and weakens JLN's arguments for the simple reason that the Court is unsure what pages of Exhibit G are actually challenged.  A detailed examination of Exhibit G does not support JLN's assertions.  This Exhibit G consists in part of several pages of a detailed letter involving a university investigation into alleged discrimination, where the details of the underlying incident are ***not*** redacted in large part.  *Id.* at 2–4.  JLN does not explain why the unredacted information is insufficient to provide adequate

United States District Court
Northern District of California

United States District Court
Northern District of California

information as to the complaint.  Further, this Exhibit G includes an email that discusses a "disturbing email" and "threats" to a complainant at the university in sufficient detail to describe the underlying incident without disclosing personally identifying information of the complainant. *Id.* at 5–6.  To the extent the remaining pages of Exhibit G are redacted admittedly in large part, JLN's argument appears to be focused on the supporting declaration from the DOE (discussed below).  In sum, JLN's arguments overlook and ignore the unredacted portions of this exhibit and fail to explain why the disclosed information is insufficient (and fail to explain why the redactions under exemption 7(A) are improper, particularly in light of the text stating that a complainant received a disturbing email).

The DOE argues that the redactions are proper under exemption 7(A) because releasing the information "could reasonably be expected to interfere with enforcement proceedings."  [Dkt. 37 at 6].  The DOE further argues that the redacted information describes alleged actions that led to investigations, and the facts (if disclosed) would identify the parties involved in the investigations. *Id.*  In support of the redactions, the DOE submitted a declaration from Heather Gunnarson, a Director in the DOE Office for Civil Rights.  [Dkt. 35-2].  In her role, Gunnarson oversees the administration of all FOIA requests assigned to the Office for Civil Rights. *Id.*

JLN challenges Gunnarson's declaration, arguing that it fails to identify specific proceedings, does not clarify whether Gunnarson is familiar with all of DOE's ongoing cases, and overbroadly asserts that the redacted proceedings are either pending or prospective without providing sufficient detail as to each.  [Dkt. 36 at 20].

Agency FOIA affidavits are presumed to be made in good faith and should be accorded substantial weight. *Ecological Rts. Found.*, 607 F. Supp. 3d at 993.  JLN provides no basis to conclude that the Gunnarson Declaration should not be given substantial weight, nor any reason to rebut the presumption of good faith.  Ms. Gunnarson expressly states under oath that the "records that contained redactions and/or withholdings pursuant to the FOIA exemption 7(A) were compiled for the purpose of enforcing one of the several Civil Rights laws that prohibit discrimination in programs or activities that receive federal financial assistance from the DOE."  [Dkt. 35-2 at ¶ 10].  Additionally, Gunnarson indicates that "law enforcement proceeding(s) involved in the records that

contained redactions and/or withholdings pursuant to the FOIA exemption 7(A) are either pending and/or prospective." *Id.* at ¶ 11.  Gunnarson further avers that "[r]elease of the information withheld pursuant to the FOIA exemption 7(A) could jeopardize OCR's enforcement proceedings." *Id.* at 12.

The Gunnarson Declaration satisfies the standard for specifying the potential harm that could occur from disclosure of the exemption 7(A) information: "release could put victims and witnesses in danger of retaliation and could prevent others from disclosing and/or filing complaints for fear their information will be exposed.  Parties could stonewall OCR's investigation.  Those involved in the discrimination may destroy, alter, or fabricate evidence.  And release of the information could disclose OCR's investigatory strategies." *Id.*

JLN's conclusory argument that "[i]t is difficult to see how the redactions address the safety of victims and witnesses" provides no basis to rebut the presumption of good faith attaching to the Gunnarson Declaration.  [Dkt. 36 at 21].  Indeed, as discussed above, the unredacted portion of Exhibit G coupled with the Gunnarson Declaration demonstrates precisely that releasing the unredacted information could put victims and witnesses in danger of retaliation, because that risk appears to have arisen with regard to a complainant at the university discussed in Exhibit G when (apparently) the university lifted a previous "no contact order".  [Dkt. 36-8 at 5].

In addition to Exhibit G (discussed above), the only other specific document challenged by JLN is Exhibit H to JLN's cross-motion.  JLN argues in a single sentence that the redactions to this Exhibit H are not supported under exemption 7 because, based on the unredacted portion, JLN argues that "[t]his email appears to be concerning an educational conference, not a complaint, so it could not likely interfere with law enforcement proceedings."  [Dkt. 36 at 21 (citing Dkt. 36-9)].  JLN's arguments myopically ignore the remainder of the unredacted portion of Exhibit H.  Contrary to JLN's representation, the document does ***not*** refer solely to an educational conference.  [Dkt. 36 at 21].  Rather, the document is an email between a university counsel and an official of the DOE with the subject "OCR Resolution Agreement in Matter 11-19-2215" and the body text states that the author is "writing regarding the resolution agreement we executed with OCR at the end of last year with respect to the Gaza conference."  [Dkt. 36-9 at 2].  On its face, the document references what appears to be an investigation docket or file number ("22-19-2215") and references an

United States District Court
Northern District of California

United States District Court
Northern District of California

1    agreement with the enforcement agency (OCR) to "resolve" an issue between OCR and that

2    university.  *Id.*  Just because that issue was "with respect to the Gaza conference" (which is not

3    identified as an "educational conference" contrary to JLN's assertion) does not mean the document

4    only concerns the conference as JLN's crimped reading of the text asserts.  Coupled with the

5    Gunnarson Declaration, the unredacted text of Exhibit H demonstrably shows that the document is

6    discussing an OCR investigation and efforts to resolve it by a formal resolution agreement with the

7    university.  JLN's characterization of this Exhibit H falls apart upon simple examination, and such

8    borderline misrepresentation puts JLN's counsel's credibility at serious risk.

9         Because JLN relies on Exhibit H as exemplary for its challenge to the remainder of the

10   exemption 7 redactions, and because as detailed above JLN's arguments in this regard and with

11   regard to Exhibit G are meritless, the Court **GRANTS** summary judgment in favor of the DOE with

12   regard to all the exemption 7(A) redactions and withholdings.

13        The second exemption 7 dispute centers on whether releasing certain information currently

14   withheld under exemption 7 would, when combined with other disclosed details, cumulatively

15   reveal the identities of complainants protected under exemption 6.  [Dkt. 37 at 4–5].  However, this

16   issue is mooted as the Court granted summary judgment in favor of the DOE pursuant to exemption

17   7.

18        Finally, the DOE has established that the redactions to JLN's Exhibit H resulted from the

19   DOE's response to a separate FOIA request that is not at issue in the action.  [Dkt. 37 at 7].  As

20   explained above, JLN lacks standing to argue that the exemptions do not apply to redactions made

21   in response to a separate FOIA request.  Accordingly, for this additional reason the Court **GRANTS**

22   summary judgment in favor of the DOE as to the redactions under exemption 7(A) in Exhibit H

23   [Dkt. 36-9].

24   **II.    JLN'S "PATTERN AND PRACTICE" CAUSE OF ACTION**

25        JLN alleges that Defendant has engaged in a pattern and practice of failing to timely issue

26   determinations in response to FOIA requests.  [Dkt. 36 at 22].  To bring a pattern and practice claim,

27   a FOIA plaintiff must first establish Article III standing by demonstrating: "(1) the agency's FOIA

28   violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged

1   policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or

2   practice." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) (citing

3   *Lujan*, 504 U.S. at 563; *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Long v. U.S. I.R.S.*,

4   693 F.2d 907, 909–10 (9th Cir. 1982)).

5       Here, JLN argues that it is entitled to summary judgment because the DOE failed to timely

6   respond to the FOIA request at issue here.  [Dkt. 36 at 22].  Specifically, JLN characterizes the

7   September 28, 2023, DOE letter as "merely a 'status update'" and argues that it does not count as a

8   "proper response." *Id.*

9       The DOE argues this characterization is incorrect, because JLN "relies on a misplaced

10  interpretation of determination in support of its argument that Defendant was untimely in its

11  response." [Dkt. 35 at 13 (citing *Citizens for Resp. & Ethics in Washington v. Fed. Election Com'n*,

12  711 F.3d 180, 188 (D.C. Cir. 2013))].  The DOE further argues that "[a] determination as to whether

13  the agency will comply with the FOIA request is not the same as the production of documents in

14  response to that request." *Id.*  The DOE asserts that its response letter from September 2024

15  constitutes a legally proper response and that therefore JLN lacks Article III standing to assert a

16  pattern and practice claim.

17      The law recognizes "a distinction exists between a 'determination' and subsequent

18  production." *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188.  An agency need only

19  "process a FOIA request and make a 'determination'" within twenty to thirty working days,

20  depending on the circumstances. *Id.* Here, JLN's FOIA request was received on August 30, 2023,

21  and the DOE provided its determination on September 28, 2023, which is twenty working days later.

22  Dkt. 35-4, ¶¶ 7–9; Dkt. 35-10, at 2–3.  Under applicable legal standards, the DOE September 28,

23  2023, letter suffices as a determination for purposes of responding to a FOIA request.  Because the

24  law recognizes that the date of actual production of documents is not the date for a "determination,"

25  JLN's arguments that the DOE violated the statute because the agency took several months to

26  process and produce documents on a rolling basis are legally unsound.  Because there is no dispute

27  that the DOE responded to JLN within the required twenty days, and because that response qualifies

28  as a determination, JLN lacks standing to assert a pattern and practice claim against the DOE.

Accordingly, the Court **GRANTS** summary judgment in favor of the DOE on JLN's pattern and practice cause of action.

### III.    DOE'S ALLEGED FAILURE TO MEET THE STATUTORY DEADLINE

JLN asserts two grounds on which the DOE allegedly failed to meet the statutory deadline in responding to the FOIA requests here.  First, JLN argues that the DOE failed to make the required determination within the statutory deadline.  Second, JLN argues that the DOE failed to conduct a reasonable search for documents in response to the FOIA request.  The Court addresses each of these grounds seriatim.

#### A.  WHETHER THE DOE FAILED TO MAKE A DETERMINATION WITHIN THE DEADLINE

In the Amended Complaint, JLN alleges that the DOE failed to make a determination with respect to JLN's FOIA request within the statutory deadline.  [Dkt. 21 at p. 9 (First Cause of Action); Dkt. 36 at 12].  Under 5 U.S.C. § 552(a)(6)(A), "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request[.]"  The statute further requires that the agency "shall immediately notify the person making such request of such determination and the reasons therefor" and shall notify the requestor of other information regarding their rights.  *Id.* at § 552(a)(6)(A)(i).

As discussed above with regard to the "pattern and practice" cause of action, the Parties do not dispute that the DOE sent a response letter on September 28, 2023, to JLN within the twenty-day deadline.  JLN argues that the September 28, 2023, letter does not qualify as a "determination" without citation to any binding or persuasive law.  [Dkt. 36 at 11-12].  By its terms, § 552(a)(6)(A) requires the agency to determine "whether to comply with such [FOIA] request" and notify the requestor.  The September 2023 letter expressly states that JLN's FOIA "request was forwarded to the appropriate officer(s) within the Department ***to conduct a search for any responsive records. At this time, your request is still being processed.***"  [Dkt. 36-3 at 2 (emphasis added)].  That notification states expressly that the request was forwarded to personnel "to conduct a search" for documents.

JLN asserts without legal support that the letter "does not state any information that would allow Plaintiff to determine whether DOE will produce documents and when." [Dkt. 36 at 13; *see also* Dkt. 38 at 2 ("DOE does not state that it will produce documents…. Defendant not only failed to specify that documents would be produced, it also failed to specify any date that the request would be completed[.]")]. That is not the standard required under the statute – the agency is ***not*** required to provide a notice of a determination on "whether" the agency "***will*** produce documents ***and when***." The statute by its terms merely requires the agency to determine whether or not it will comply with the request, and so notify the requestor. Telling JLN that the DOE forwarded the request to personnel to conduct a search for responsive documents constitutes a notification that the DOE is, in fact, complying with the request. Making a search for documents is one of the first steps in complying with a request. If the DOE had determined not to comply with the request, it would have refused to forward the request to anyone to search for any documents.

At the time the search starts, the agency has no way to know for certain whether any responsive documents exist and thus no way to know whether any documents "will" be produced or "when"—and Section 552(a)(6)(A) does not impose that requirement. JLN's demand that a notification letter state unequivocally that documents "will" be produced and "specify any date that the request would be completed" is outside the statute and is invented from whole cloth by JLN. JLN cites no case law which requires an agency to presciently predict that responsive documents will be found and will be produced, and JLN cites no legal support in either the statute or case law requiring "magic language" to adequately communicate the determination required by the statute. As with JLN's crimped interpretation of an exhibit (discussed above), JLN's redrafting of the statute, coupled with its crimped interpretation of the September 2023 letter, is legally and factually unsupported.

Finally, on reply JLN argues for the first time that the September 2023 letter was somehow deficient because the "response did not give the instructions for appeal." [Dkt. 38 at 3]. Again, JLN cites no law to support this argument. The statute does ***not*** require an agency to provide any "instructions for appeal" when the agency has determined it will comply with the FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(i)(I)-(II). The statute only requires notification of certain specific

United States District Court
Northern District of California

information regarding the requestor's *right to appeal* (and not "instructions for appeal") *only* "in the case of an *adverse determination.*" *See id.* at § 552(a)(6)(A)(i)(III).  Here, there was no "adverse determination" and JLN provides no factual or legal support for interpreting the September 2023 letter as communicating a determination not to comply with the FOIA request.  Because there was no "adverse determination" here, the DOE's letter was not required to provide notice of the right to appeal or any other matters in subsection (III) of the statute.  Indeed, the fact that the September 28, 2023, letter omitted any discussion of a right to appeal (or any other matters required by subsection (III) of the statute) is further indication that the DOE made a positive determination to comply with the FOIA request and was so notifying JLN.  JLN's attempt to confusingly inject notice of the right to appeal in a situation where the agency had determined to comply with the request by starting the search for documents is legal error, and both misreads and misapplies the statute.

Accordingly, the Court **FINDS** that the September 28, 2023, letter notified JLN of the DOE's determination to comply with the FOIA request, and thus satisfied the "determination" and "notification" requirements of Section 552(a)(6)(A).

The DOE further argues that JLN's cause of action here has been rendered moot.  "[T]he production of all nonexempt material, 'however belatedly,' moots FOIA claims."  *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); 5 U.S.C. § 552).  Here, the DOE provided its final response on March 11, 2024, and thus finished its production of all nonexempt material.  [Dkt. 21 at ¶ 38].  That final response predates the Amended Complaint (the operative complaint in this matter) by about three weeks.  *Compare id.*, *with* [Dkt. 21 (filed April 2, 2024)].  Under *Papa*, the DOE's final response moots JLN's claim that the agency failed to provide a substantive response to a FOIA request.  *Papa*, 281 F.3d at 1013 (citing *Perry*, 684 F.2d at 125; 5 U.S.C. § 552).  JLN's sole argument that *Papa* is relied on by the DOE to argue "timeliness" of the notification is a misreading of the DOE's briefing.  [Dkt. 38 at 2].  And JLN's recasting of the DOE's argument to state that the DOE is relying on the Amended Complaint as mooting the cause of action, dkt. 38 at 4, is a further misreading of the DOE's argument and fails to distinguish *Papa*'s application here.  The DOE relies on its final response and production of final documents as the basis for mootness.  JLN fails to distinguish the application of

United States District Court
Northern District of California

1    *Papa*'s mootness doctrine here as a matter of law.

2        Accordingly, the Court **GRANTS** summary judgment in favor of the DOE on the First Cause

3    of Action (Failure to Comply with Statutory Deadlines) on the grounds that the DOE satisfied the

4    "determination" and "notification" requirements of § 552(a)(6)(A) and alternatively on the grounds

5    that this cause of action is moot.

6        **B.  WHETHER THE DOE FAILED TO CONDUCT A REASONABLE
          SEARCH**

7

8        JLN cross-moves for summary judgment with respect to the First Cause of Action on the

9    grounds that the DOE failed to conduct a reasonable search in response to the FOIA request.  [Dkt.

10   36 at 13].  To comply with a FOIA request, an agency must conduct a reasonable search for

11   responsive records.  *Hamdan*, 797 F.3d at 770.  JLN complains that, "[n]o description of the search

12   has been provided to allow the Court to determine whether the search was reasonable.  DOE does

13   not explain where the records are located and what facilities were searched.  DOE does not explain

14   its keywords used or search methodology."  *Id.*

15       The DOE argues that this request for summary judgment should be denied as a matter of law

16   because the "operative Amended Complaint does not allege that Defendant conducted an inadequate

17   search."  [Dkt. 37 at 9].

18       The Court agrees and denies JLN's cross-motion for summary judgment on the First Cause

19   of Action on the asserted grounds.  After carefully reviewing the operative Amended Complaint,

20   the Court finds there is no pleading or mention in the First Cause of Action discussing or mentioning

21   failure to perform a reasonable search.  [Dkt. 21 at ¶¶ 40–46].  The First Cause of Action is directed

22   to the timeliness of the determination issue discussed above.  Under the notice pleading standard,

23   the First Cause of Action as pled does not give the DOE notice that "reasonableness of the search"

24   is at issue.  Had the DOE known that this issue was part of this cause of action, the DOE could have

25   moved for summary judgment on this issue as well as discussed below.  JLN did not adequately

26   plead that the DOE failed to conduct a reasonable search as a basis for its claim that there was a

27   failure to comply with statutory deadlines.  Denying summary judgment is appropriate if the

28   complaint does not allege the cause of action or the facts supporting the cause of action.  *See Pickern*

United States District Court
Northern District of California

*v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (affirming the district court's denial of summary judgment when plaintiff failed to plead certain facts in the amended complaint). As the Plaintiff and moving party here, JLN has the burden to show that there are no genuine disputes of material facts and that it is entitled to judgment as a matter of law on this cause of action. Fed. R. Civ. P. 56(a). By failing to plead that reasonableness of the search was even an issue for the First Cause of Action, JLN has failed to show that any facts (much less disputes of fact) as to the reasonableness of the search are material in any legally relevant way to the First Cause of Action as pled.

The DOE further argues that this cross-motion for summary judgment should be denied because JLN affirmatively waived this theory as to this Cause of Action. [Dkt. 37 at 9]. The original Complaint did expressly request, as relief that the DOE be ordered to conduct a reasonable search in response to the FOIA request. [Dkt. 1 at 11]. The currently operative Amended Complaint dropped that requested relief. [Dkt. 21 at 12–13]. The DOE explains that, between the dates of the original Complaint and the Amended Complaint, the Parties negotiated and came to express agreement on search terms to be used to search for responsive documents. [Dkt. 37-2 (emails between counsel setting forth and reaching agreement on multiple search terms to be used)]. This explains why, by the time of the Amended Complaint, JLN removed the language requesting the Court to order the DOE to conduct a reasonable search. As the moving party here, JLN has the burden to show that there are no genuine disputes of material facts and that it is entitled to judgment as a matter of law on this cause of action. At a minimum, the DOE has provided substantial uncontroverted evidence which raises a genuine dispute on JLN's contention that the search was not reasonable, and summary judgment is inappropriate for this reason alone. JLN mistakenly shifts the burden to the DOE to establish in opposing summary judgment that the search was reasonable. To be entitled to its cross-motion for summary judgment, JLN (not the DOE) has the burden to show no genuine dispute that the search was unreasonable. JLN failed to make this showing.

Further, a party that agrees to a course of action has waived the right to complain that the agreed-upon course of action is unreasonable. Here, JLN agreed to the search terms and has thus waived arguing that the search terms are unreasonable. Analogously, JLN expressly represented to

24

United States District Court
Northern District of California

the DOE that JLN agreed to the search terms used here, and in reliance on that representation, the DOE used those search terms.  Similar to the concept of waiver, under the facts presented JLN is also estopped from asserting that the agreed-upon search terms are unreasonable.  In light of the uncontroverted evidence presented by the DOE, the Court **FINDS** that JLN waived (or is estopped from) arguing that the reasonableness of the search is grounds for JLN's cross-motion for summary judgment on the First Cause of Action.  Based on the uncontroverted evidence, it is apparent that, had the DOE known that JLN intended to pursue this unpled theory, the DOE could have moved for partial summary judgment on the First Cause of Action with regard to the reasonableness of the search.

The Court is troubled that this appears to be yet another instance in connection with these motions where JLN's counsel's manner of litigation has put its credibility and professionalism in serious question.  In the briefing, JLN represented flatly to the Court that "No description of the search has been provided" and that "DOE does not explain its keywords used or search methodology."  [Dkt. 36 at 13].  In opposition, the DOE provided a description of the search, explained the agreed-upon keywords used, and explained the methodology of the search would be to use these search terms.  JLN knew all this prior to filing its cross-motion for summary judgment.  After being confronted by the DOE's opposition brief and the evidence of the agreement between counsel on the search terms, JLN modified its argument to mean that the DOE was required to submit evidence to the Court (and not to JLN) describing the search terms "actually" used, that JLN attempts to distinguish from search terms which were "agreed" to be used.  [Dkt. 38 at 3].  JLN ignores the fact that the DOE's counsel expressly stated under Rule 11 in its brief that the agreed-upon "search parameters" were "***used*** to locate responsive documents."  [Dkt. 37 at 9 (emphasis added)].  JLN's counsel negotiated and knew the search terms to be used.  During the discovery and disclosure period, JLN's counsel had every opportunity to confirm any suspicion whether the DOE was failing to or refusing to use the agreed-upon search terms.  JLN dropped a request for relief in the Amended Complaint regarding the reasonableness of the search.  JLN provided no basis to believe or suspect that counsel for the DOE, having agreed to the search terms, would then surreptitiously fail to use the agreed-upon search terms.  Despite all this, counsel for JLN represented

1    to the Court that "no description" of the search was provided and that the DOE provided no

2    explanation of the keywords used.  JLN's counsel omitted telling the Court that JLN's counsel knew

3    that search terms had been negotiated, knew what those search terms were, and knew that JLN

4    agreed to those search terms with the DOE's counsel.  Counsel for JLN is on notice that any further

5    misrepresentations of fact or omissions of material fact in submissions to the Court may result in an

6    Order to Show Cause, including potential sanctions.

7        Accordingly, the Court **DENIES WITH PREJUDICE** JLN's cross-motion for summary

8    judgment on the First Cause of Action (Failure to Comply with Statutory Deadlines) on the grounds

9    of lack of reasonable search by the DOE for all the reasons stated herein.

10   **IV.    DOE'S FAILURE TO REASONABLY SEGREGATE**

11       JLN seeks summary judgment on its Fourth Cause of Action that the DOE purportedly failed

12   to reasonably segregate documents.  [Dkt. 21 at 12 (Fourth Cause of Action); Dkt. 36 at 21].  "FOIA

13   provides that any 'reasonably segregable portion of a record shall be provided to any person

14   requesting such record after deletion of the portions which are exempt under this subsection.'"

15   *Hamdan*, 797 F.3d at 778–79 (quoting 5 U.S.C. § 552(b)). The Ninth Circuit has held that "'[i]t is

16   reversible error for the district court 'to simply approve the withholding of an entire document

17   without entering a finding on segregability, or the lack thereof,' with respect to that document.'"  *Id.*

18   (quoting *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir. 1991)).  "The burden is on the agency to

19   establish that all reasonably segregable portions of a document have been segregated and disclosed."

20   *Id.* (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)).  "The agency

21   can meet this burden by providing the district court with a reasonably detailed description of the

22   withheld material and 'alleging facts sufficient to establish an exemption.'"  *Id.*

23       Courts "may rely on an agency's declaration in making its segregability determination."  *Id.*

24   "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be

25   taken at face value."  *Id.* (citing *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).  "In short, a

26   district court is not required to conduct an independent in camera review of each withholding unless

27   an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency."  *Id.*

28       Here, the basis of JLN's cross-motion for summary judgment primarily rests on how

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "[m]any redactions covered entire pages, and others were not narrowly tailored, covering entire

2    paragraphs." [Dkt. 36 at 21].  The Court disagrees with such characterizations and notes that JLN's

3    arguments do not rebut the factual showings in the DOE's declarations submitted on these motions.

4         The DOE's declarations are sufficiently detailed such that this Court can and will take them

5    at face value.  The DOE declarations specify the withheld documents individually, offer a detailed

6    explanation of the withheld material, and identify the applicable exemption (or exemptions) for

7    each.  As discussed specifically with regard to the challenged exemptions above, the Gunnarson

8    Declaration is sufficiently detailed and JLN provides no basis to rebut the presumption of good faith

9    attaching to that declaration.  [Dkt. 36-2].  Similarly, the other declaration relied on by the DOE,

10   submitted by Robert Wehausen (Director of Operations for the DOE), provides details on the meet

11   and confers and communications between counsel to clarify the scope of the requests, the date of

12   and numbers of documents provided during the process of responding to the FOIA request, and

13   explains that redactions and withholdings in the November 26, 2023, production were applied in

14   response to other, separate FOIA requests unless otherwise specified in the *Vaughn* index.  [Dkt.

15   36-4].

16        JLN recites no reason why the Court should refuse to take the DOE's declarations at face

17   value.  Indeed, there is ample evidence that the DOE acted in good faith in its dealings with JLN

18   and the Court, including multiple meet and confers, reviewing materials for release at Plaintiff's

19   request, and closely scrutinizing what it releases.  As the party cross-moving for summary judgment

20   here, JLN has the burden to establish there are no genuine issues of material fact and that JLN is

21   entitled to judgment as a matter of law on the alleged failure to reasonably segregate.  In light of the

22   declarations of the witnesses submitted by the DOE, and in light of the *Vaughn* index (which further

23   explains the redactions and segregation of information), and in light of the totality of the

24   circumstances surrounding the DOE's processing of documents in response to the request (including

25   the Court's review of redactions on specific documents complained about by JLN as discussed

26   herein), the Court **FINDS** that JLN has not met its burden to establish there are no genuine issues

27   of material fact and that it is entitled to judgment as a matter of law on the reasonable segregation

28   issue.

Accordingly, the Court **DENIES WITH PREJUDICE** JLN's cross-motion for summary judgment on the Fourth Cause of Action (Failure to Reasonably Segregate) for all the reasons stated herein.

## CONCLUSION

Accordingly, for the reasons discussed herein and in light of the applicable legal standards, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the DOE's motion for summary judgment and JLN's cross-motion for summary judgment as detailed herein.

This **RESOLVES** Dkts. 35 and 36.

**IT IS SO ORDERED.**

Dated:  March 31, 2025

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

28